COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Felton, Judges Petty and Beales
Argued at Chesapeake, Virginia


MICHAEL JUNIOR BELLAMY

OPINION BY
v.      Record No. 0199-11-1      CHIEF JUDGE WALTER S. FELTON, JR.
MAY 1, 2012
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Norman A. Thomas, Judge

J. Barry McCracken, Assistant Public Defender (Office of the Public
Defender, on brief), for appellant.

Katherine Quinlan Adelfio, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Michael Junior Bellamy ("appellant") was convicted by the Circuit Court of the City of

Norfolk ("trial court") of possession of ammunition by a convicted felon in violation of Code

§ 18.2-308.2. On appeal, appellant contends that the trial court erred in denying his motion to

suppress evidence found during a search incident to his arrest, arguing that he was unlawfully

arrested based on erroneous information supplied to the arresting officer by a police dispatcher. For

the following reasons, we affirm the judgment of the trial court.

I. BACKGROUND

On March 15, 2010, Norfolk Police Officer J.L. Hall was dispatched to answer a 911

domestic violence call at appellant's residence "between a father and a son." When he arrived at

the residence, Officer Hall met appellant's adult stepson standing at the front door. After

speaking with appellant and appellant's adult stepson, Officer Hall testified that there appeared

to be no ongoing dispute between the two men. Immediately after Officer Hall left the residence

and walked toward his vehicle, the two men came to the door of the residence, yelling at each other and wrestling over a lamp as each was trying to strike the other with it. Officer Hall separated the two men and obtained their full names, dates of birth, and social security numbers which he relayed to a police dispatcher. The dispatcher informed Officer Hall that there was an outstanding arrest warrant for appellant, but did not provide any further information concerning the warrant.

On receipt of this information, Officer Hall "placed [appellant] into custody" pursuant to the reported outstanding arrest warrant. Prior to searching appellant incident to the arrest, Officer Hall testified that he "asked [appellant] if he had anything on him that I should be concerned about that would poke me, stab me, or cut me, because I was getting ready to search him. At that point in time he stated that he had marijuana in his pocket." [1] Officer Hall removed the marijuana from appellant's pocket. He also recovered an unused .22 caliber bullet from appellant's pocket.

After Officer Hall placed appellant in the rear of the police car, he radioed the Norfolk Police Warrant Office to verify the contents of the arrest warrant. [2] A warrant office staff member advised Officer Hall that the arrest warrant reported by the police dispatcher had previously been served on appellant.

The Commonwealth indicted appellant for possession of ammunition by a convicted felon in violation of Code § 18.2-308.2(D). After a hearing on appellant's suppression motion, the trial court denied the motion relying on Herring v. United States, 555 U.S. 135 (2009):

---

[1] Appellant's charge for possession of marijuana is not before us on appeal.

[2] Officer Hall testified that after arresting an individual on an outstanding arrest warrant, standard operating procedure directs that the arresting officer call the warrant office to verify the arrest warrant and to have a copy faxed to the booking department of the jail where the arrested person will be transported.

I think this is controlled by Herring. And the danger I can see in adopting [appellant's] position . . . which I don't think it's constitutional, but rather of police policy, if the policeman is there on his radio and he gets back from [the] dispatcher that there's a warrant on file and he doesn't do anything, then he has to double check with a warrant office, there's a chance, not this defendant in particular, but a defendant may escape. A defendant may get violent when he finds out there's a warrant on file and attacks [sic] the officer.

Appellant was thereafter convicted by a jury of possession of ammunition by a felon. This appeal followed.[3] For the following reasons, we affirm appellant's conviction.

## II. ANALYSIS

On appeal, appellant argues that the trial court erred in denying his motion to suppress evidence of the bullet found in his pocket. Specifically, he asserts that Officer Hall violated his Fourth Amendment right against unlawful search and seizure by arresting him and searching him incident to that arrest based on erroneous information received from the police dispatcher. He argues Officer Hall should have first contacted the warrant office to verify the existence of the arrest warrant prior to arresting and searching him.[4] He asserts that the evidence found by Officer Hall pursuant to that search must be excluded as evidence at trial under the Fourth Amendment exclusionary rule.

"In reviewing the denial of a motion to suppress evidence claiming a violation of a person's Fourth Amendment rights, we consider the facts in the light most favorable to the Commonwealth, the prevailing party at trial." Malbrough v. Commonwealth, 275 Va. 163, 168-69, 655 S.E.2d 1, 3 (2008). An appellate court should "'give due weight to inferences

---

[3] By *per curiam* order dated July 28, 2011, this Court denied that portion of appellant's petition for appeal challenging the sufficiency of the evidence.

[4] Appellant's reliance on Smith v. Commonwealth, 55 Va. App. 30, 683 S.E.2d 316 (2009), in support of his arguments is misplaced. The analysis of this Court in that opinion was subsequently rejected by the Supreme Court. Commonwealth v. Smith, 281 Va. 582, 709 S.E.2d 139 (2011).

drawn from those facts by resident judges and local law enforcement officers.'" Reittinger v. Commonwealth, 260 Va. 232, 236, 532 S.E.2d 25, 27 (2000) (quoting Ornelas v. United States, 517 U.S. 690, 699 (1996)). "[A] defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review *de novo* on appeal." King v. Commonwealth, 49 Va. App. 717, 720, 644 S.E.2d 391, 392 (2007) (citing Ornelas, 517 U.S. at 691).

The Fourth Amendment protects "'the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" Arizona v. Evans, 514 U.S. 1, 10 (1995) (quoting U.S. Const. amend. IV). "Local law enforcement personnel are subject to the requirements of the Fourth Amendment under the due process clause of the Fourteenth Amendment." Lowe v. Commonwealth, 230 Va. 346, 348 n.1, 337 S.E.2d 273, 274 n.1 (1985) (citing Mapp v. Ohio, 367 U.S. 643, 655 (1961)).

The Fourth Amendment exclusionary rule "'prevents evidence obtained in violation of the [F]ourth [A]mendment from being used against an accused.'" Redmond v. Commonwealth, 57 Va. App. 254, 261, 701 S.E.2d 81, 84 (2010) (quoting Commonwealth v. Ealy, 12 Va. App. 744, 750, 407 S.E.2d 681, 685 (1991)).

> The Fourth Amendment exclusionary rule was first announced by the Supreme Court in Weeks v. United States, 232 U.S. 383 (1914). It was applied to the States in Mapp v. Ohio, 367 U.S. 643 (1961). Mapp described the exclusionary rule as a judicially implied, yet constitutionally required, "deterrent safeguard without insistence upon which the Fourth Amendment would have been reduced to 'a form of words.'" Id. at 648 (quoting Silverthorne Lumber Co. v. United States, 251 U.S. 385, 392 (1920) (Holmes, J.)). . . . [T]he deterrence ground . . . is now firmly established as the primary, if not sole reason, for the exclusionary rule. See Stone v. Powell, 428 U.S. 465 (1976); United States v. Janis, 428 U.S. 433 (1976); United States v. Calandra, 414 U.S. 338 (1974).

County of Henrico v. Ehlers, 237 Va. 594, 602, 379 S.E.2d 457, 461 (1989).

The exclusionary rule only applies where it "'result[s] in appreciable deterrence'" of unlawful police conduct. United States v. Leon, 468 U.S. 897, 909 (1984) (quoting Janis, 428 U.S. at 454).

> "The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right. By refusing to admit evidence gained as a result of such conduct, the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of an accused. Where the official action was pursued in complete good faith, however, the deterrence rationale loses much of its force."

United States v. Peltier, 422 U.S. 531, 539 (1975) (quoting Michigan v. Tucker, 417 U.S. 433, 447 (1974)). The United States Supreme Court has repeatedly reiterated the deterrent element of the exclusionary rule.

> "Where the officer's conduct is objectively reasonable, 'excluding the evidence will not further the ends of the exclusionary rule in any appreciable way; for it is painfully apparent that . . . the officer is acting as a reasonable officer would and should act in similar circumstances. Excluding the evidence can in no way affect his future conduct unless it is to make him less willing to do his duty.'" Leon, [468 U.S. at] 919-20 (quoting Stone, [428 U.S.] at 539-40 (White, J., dissenting)).

Evans, 514 U.S. at 11-12. Most recently in Herring, the Supreme Court further discussed the deterrent element of the exclusionary rule.

> To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence.

Herring, 555 U.S. at 144.

Here, the exclusionary rule does not require suppression of the evidence found during the search incident to arrest of appellant. Officer Hall was objectively reasonable in relying on the

dispatcher's report that there was an outstanding warrant for appellant.[5]  Once Officer Hall received information from the dispatcher that there was an outstanding warrant for appellant's arrest, he was objectively reasonable in arresting and searching appellant incident to that arrest, prior to placing him into the back of the police vehicle.  It was only when Officer Hall placed the call to the warrant office to verify that the arrest warrant was outstanding, that he was informed that warrant had previously been served on appellant and was no longer outstanding.[6]

In Herring, "the miscommunication[] occurred . . . after the warrant had been issued and recalled -- but that fact should not require excluding the evidence obtained."  Id. at 145.  When police err in the manner presented in this record, which is not "systemic error or reckless disregard of constitutional requirements," any application of the exclusionary rule to deter police misconduct "does not 'pay its way.'"  Id. at 147-48 (quoting Leon, 468 U.S. at 907-08 n.6).  Accord Evans, 514 U.S. at 11-12.  The United States Supreme Court has "'never suggested that the exclusionary rule must apply in every circumstance in which it might provide marginal deterrence.'"  Herring, 555 U.S. at 141 (quoting Pa. Bd. of Prob. and Parole v. Scott, 524 U.S. 357, 368 (1998)).

---

[5] Other states considering similar cases are in accord.  See Shotts v. State, 925 N.E.2d 719 (Ind. 2010) (applying "good faith" exception to exclusionary rule where officers reasonably relied on erroneous NCIC report of an outstanding Alabama warrant for defendant's arrest); Domino v. Crowley City Police Dep't, 65 So. 3d 289 (La. Ct. App. 2011) (applying "good faith" exception to exclusionary rule where officer reasonably relied on validly issued warrant, which warrant he in good faith did not know had been recalled); State v. Geiter, 942 N.E.2d 1161 (Ohio Ct. App. 2010) (applying "good faith" exception to exclusionary rule where officer was objectively reasonable in relying on erroneous information conveyed via police dispatch).

[6] Nothing in the record before us suggests any flagrant or intentional conduct by either the police dispatcher in reporting there was an outstanding arrest warrant on file for appellant, or by Officer Hall in responding to the information received from the dispatcher.

Accordingly, we conclude from the record on appeal that the trial court did not err when it denied appellant's motion to suppress the unused .22 caliber bullet located in appellant's pocket during the search incident to his arrest.

## III. CONCLUSION

For the foregoing reasons, we conclude that the trial court did not err in finding Officer Hall's objectively reasonable good faith reliance on the initial dispatcher's report of an outstanding warrant for appellant's arrest did not require suppression of the bullet.

Affirmed.
