FILED

03/12/2019

Clerk of the
Appellate Courts

IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
April 4, 2018 Session

**STATE OF TENNESSEE v. JEROME ANTONIO MCELRATH**

**Appeal by Permission from the Court of Criminal Appeals
Circuit Court for Obion County
No. CC-15-CR-71;72     Jeff Parham, Circuit Court Judge**

_____

**No. W2015-01794-SC-R11-CD
No. W2015-01958-SC-R11-CD
(consolidated on appeal)**

_____

We granted the State's permission to appeal in this case to determine whether to adopt, as a matter of state law, the good-faith exception to the exclusionary rule set forth by the United States Supreme Court in *Herring v. United States*, 555 U.S. 135 (2009), and if so, whether the *Herring* good-faith exception permits introduction of the evidence in this case. A Union City police officer arrested the defendant without a warrant because he was on a list of individuals who had been "barred" from housing authority property. The list in question was maintained by the Union City Police Department. Upon performing a search incident to arrest, the officer seized marijuana from the defendant. Nineteen days later, the same officer arrested the defendant on the same property based on the same list and again seized marijuana from the defendant. It was later discovered that the list was incorrect and that the defendant's name should have been removed prior to the date of his arrests. The trial court suppressed the evidence in both cases, and the Court of Criminal Appeals affirmed. The trial court and the Court of Criminal Appeals based their decisions on Tennessee's not having yet adopted *Herring*'s good-faith exception. Upon discretionary review, we adopt the good-faith exception as set forth by *Herring* but conclude that neither of the defendant's arrests falls within the good-faith exception. Accordingly, the judgment of the Court of Criminal Appeals is affirmed.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal
Appeals Affirmed.**

ROGER A. PAGE, J., delivered the opinion of the court, in which JEFFREY S. BIVINS, C.J., and CORNELIA A. CLARK, JJ., joined. SHARON G. LEE, J., filed a separate opinion concurring in part and dissenting in part. HOLLY KIRBY, J., filed a separate opinion concurring in part and dissenting in part.

Herbert H. Slatery III, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; Andrew C. Coulam, Assistant Attorney General; Tommy A. Thomas, District Attorney General; and James T. Cannon, Assistant District Attorney General.

James T. Powell, Union City, Tennessee, for the appellee, Jerome Antonio McElrath.

**OPINION**

As a result of the defendant's arrests as described in detail *infra*, the defendant was charged by separate indictments with simple possession of marijuana, a Class A misdemeanor, in the first count of each indictment and with simple possession of marijuana for the fourth time, a Class E felony, in the second count of each indictment because the defendant had been convicted of simple possession on January 16, 2015; October 7, 2004; and April 19, 2001. *See* Tenn. Code Ann. § 39-17-418(e) (2014) ("A violation under this section is a Class E felony where the person has two (2) or more prior convictions under this section . . . .").[1] The defendant filed motions to suppress the evidence in both cases, which were consolidated prior to trial. The following facts were adduced at the hearing on the motion to suppress.

**I. Facts**

On April 8, 2015, Union City Police Officer Chris Cummings was patrolling an area of Union City and passed the Union City Housing Authority property. Officer Cummings observed the defendant standing outside of the community center. Acting upon his belief that the defendant was barred from the housing authority property, Officer Cummings radioed dispatch to check the "barred" list. The dispatcher advised Officer Cummings that the defendant was, indeed, on the "barred" list. Officer Cummings called

---

[1] The offense dates in this case occurred in 2015; at that time, the 2014 version of the Tennessee Code made simple possession of marijuana, third or subsequent conviction, a Class E felony. Tenn. Code Ann. § 39-17-418(e) (2014). However, the 2016 amendment changed this enhancement to require two (2) or more prior convictions under this section *and* the presence of a Schedule I controlled substance classified as heroin in the current violation. Tenn. Code Ann. § 39-17-418(e) (Supp. 2016).

- 2 -

for another unit to assist, then drove back to the housing authority property. The defendant and another individual walked inside the community center as Officer Cummings approached in his vehicle. As Officer Cummings began to follow the defendant, the defendant "took off" through the building toward the rear of the structure, where Officer Cummings stopped the defendant and asked him to accompany Officer Cummings outside. Officer Cummings then placed the defendant under arrest for criminal trespass and performed a search incident to arrest. The search yielded approximately ten grams of marijuana from the defendant's pocket.

On April 27, 2015, Officer Cummings was again patrolling the area that encompassed the Union City Housing Authority property when he observed an apparent altercation on the property. He approached to break up the fight and observed several people present, including the defendant. Officer Cummings warned the defendant that he was barred from the property and that he should leave the property or be escorted to jail. The defendant continued to make disparaging comments toward Officer Cummings, which prompted him to arrest the defendant for criminal trespass a second time. During this incident, the defendant was uncooperative and did not cease his combative behavior until Officer Cummings threatened to use a taser. Officer Cummings required the assistance of additional officers to be able to perform a search of the defendant, which yielded approximately four grams of marijuana.

Union City Police Department Lieutenant Melvin Dowell was responsible for maintaining a list of people barred from housing authority properties and kept a copy of the list in the dispatch office. When an individual is barred from a housing authority property, Lieutenant Dowell sends the individual a criminal trespass letter containing all of the relevant information about the barring. Being barred is not permanent; when an individual completes the application to request to be removed from the list and all of the necessary parties have approved the request, Lieutenant Dowell notifies the individual that his name has been removed from the list, and he then gives a copy of the notice to the office secretary to have the person removed from the barred list. Officers call in for information when they have a question about the list.

Officer Cummings brought with him to the suppression hearing two printouts of the "barred" list. The first list was printed on March 23, 2015, and the second list was printed on May 11, 2015, subsequent to the defendant's arrests. The March list indicated that the defendant was barred from the Union City Housing Authority property on October 19, 2007, because of illegal drug offenses. The May list also named the defendant as being barred from the property.

- 3 -

Following a third incident that is not subject to this appeal, Officer Cummings learned that the defendant had actually been removed from the barred list prior to the two offenses involved in this case. The defendant had apparently completed the requisite procedure to be removed from the list, and his request had been approved and was effective as of August 16, 2010. The defendant's name appeared on an April 11, 2014 list of people who had been removed from the barred list, but his name also remained on the actual list of barred people. Essentially, a clerical error had occurred. As a result of the arrests in these two instances, the defendant was re-barred on May 15, 2015.

At the conclusion of the suppression hearing, the trial court granted the defendant's motion to suppress, stating:

> This matter is here on a motion to suppress a warrantless arrest of the defendant. Therefore, the burden is on the state to prove that . . . it is an exception to the warrant requirement.
>
> I think we're clear here that the question now is do we want to have a good-faith exception to that requirement in order to get around the exclusionary rule.
>
> The Court finds that, as I had earlier asked, but for the mistaken inclusion of the defendant, Mr. McElrath, on the barred list, he would not have been arrested. The Court finds that Officer Cummings testified that on April 8th, he saw the defendant standing outside the housing authority's location; he thought that the defendant was on the barred list. I believe he even testified that he keeps a copy of the barred list. So he called dispatch to verify, and dispatch showed that he was on the barred list. I think it's pretty much stipulated to, and if one looks through the documents that that was a mistake. I'm not a hundred percent sure whose mistake it was. [Lieutenant] Dowell testified that he maintains the list and that Mr. McElrath had been barred in 2007 but had requested in 2010 to be removed, and that there is a form to be filled out to be removed from the criminal trespass list, which Mr. McElrath did fill out and was approved by the chief of police for the Union City Police Department, Ms. Burden for the housing authority and a manager from East Gate Village. So it was approved that he be removed from the barred list. And that's also reflected in Exhibit 4 that shows the revised list dated 4/11/14 that he should have been removed – 4/11/14 – but for whatever reason, the dispatcher or whoever gets the running list didn't remove it; although we do have Ms.

- 4 -

Burden testifying that somehow the defendant ended up on both lists. He was on the . . . unbarred list and the barred list.

So but for the dispatcher picking up the barred list, she could have easily – he or she easily could have picked up the unbarred list, I guess, in light of the fact that they keep two lists. I don't know why you would keep two lists. One would think that you would only go with the barred list and not have an unbarred list. You're either on the barred list or you're not on the barred list.

The [S]tate has moved the Court to find that Officer Cummings had a good-faith exception here and that he did nothing wrong, and I find that Officer Cummings didn't do anything wrong. However, so far, the Supreme Court case[s] in Tennessee and the criminal court case[s] in Tennessee hold that we don't have a good-faith exception to the exclusionary rule. It's my understanding of the law that we can be more restrictive than the federal government in the exclusionary rule. If this were a federal case in U.S. Federal Court, I don't think there'd be any doubt that the officer would have been entitled to bring this evidence up and to keep Mr. McElrath in court. However, I'm not inclined to make that decision based upon the cases that have been cited and the holdings that are currently in place in the state of Tennessee. Right now, we don't have a good-faith exception, and, therefore, I am going to suppress the evidence.

The State appealed the trial court's decisions to the Court of Criminal Appeals, which affirmed suppression of the evidence. *State v. McElrath*, W2015-01794-CCA-R3-CD, 2017 WL 2361960 (Tenn. Crim. App. May 31, 2017), *perm. app. granted* (Tenn. Oct. 5, 2017). We granted permission to appeal in this case to determine whether, as a matter of state law, Tennessee should adopt the good-faith exception set forth by the United States Supreme Court in *Herring*, and if so, whether *Herring* would apply under these facts to permit introduction of evidence that was seized as a result of a law enforcement officer's reasonable reliance on incorrect information in a database maintained by the same police department.

## II. Standard of Review

The facts in this matter are not in dispute. Rather, our review is limited to whether the Court of Criminal Appeals properly declined to apply the good-faith exception espoused in *Herring v. United States*, 555 U.S. 135 (2009). We review this question of

law de novo, with no presumption of correctness. *State v. Hawkins*, 519 S.W.3d 1, 32-33 (Tenn. 2017) (citing *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001)); *State v. Turner*, 297 S.W.3d 155, 160 (Tenn. 2009) (citations omitted).

## III. Analysis

### A. *The Fourth Amendment*

The Fourth Amendment to the United States Constitution guarantees that "'[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . .'" *State v. Christensen*, 517 S.W.3d 60, 68 (Tenn. 2017) (quoting U.S. Const. amend. IV); *State v. McCormick*, 494 S.W.3d 673, 678 (Tenn. 2016). Determining whether a particular search is "unreasonable" and therefore a violation of the rights guaranteed by the Fourth Amendment "'depends upon all of the circumstances surrounding the search . . . and the nature of the search . . . itself.'" *Turner*, 297 S.W.3d at 160 (quoting *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985)).

Similarly, article I, section 7 of the Tennessee Constitution provides that "'the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures.'" *Christensen*, 517 S.W.3d at 68 (quoting Tenn. Const. art. I, § 7). This Court has opined that the search and seizure provision in the Tennessee Constitution is "'identical in intent and purpose with the Fourth Amendment.'" *Id.* at 68 (quoting *Sneed v. State*, 221 Tenn. 6, 423 S.W.2d 857, 860 (1968)). Searches and seizures conducted pursuant to valid warrants are presumptively reasonable. *McCormick*, 494 S.W.3d at 678-79 (citing *State v. Scarborough*, 201 S.W.3d 607, 616-17 (Tenn. 2006)). Conversely, warrantless searches and seizures are presumptively unreasonable, and any evidence that is discovered as a result thereof is subject to suppression. *Turner*, 297 S.W.3d at 160 (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971); *State v. Bridges*, 963 S.W.2d 487, 490 (Tenn. 1997)); *McCormick*, 494 S.W.3d at 678-79 (citing *Kentucky v. King*, 563 U.S. 452, 459 (2011); *State v. Bell*, 429 S.W.3d 524, 529 (Tenn. 2014)). The general rule governing presumptively unreasonable warrantless searches and seizures "is subject to 'a few specifically established and well-delineated exceptions[,] jealously and carefully drawn.'" *Turner*, 297 S.W.3d at 160 (quoting *Coolidge*, 403 U.S. at 455).

> "These exceptions include searches and seizures conducted incident to a lawful arrest, those yielding contraband in plain view, those in the hot

- 6 -

pursuit of a fleeing criminal, those limited to a stop and frisk based on reasonable suspicion of criminal activity, those based on probable cause in the presence of exigent circumstances, and those based on consent."

*Id.* (quoting *State v. Day*, 263 S.W.3d 891, 901 n.9 (Tenn. 2008)) (internal quotation marks omitted).  The State carries the burden of proving that a warrantless search was constitutionally permissible.  *State v. Ingram*, 331 S.W.3d 746, 755 (Tenn. 2011) (citing *State v. Nicholson*, 188 S.W.3d 649, 656-57 (Tenn. 2006)); *State v. Berrios*, 235 S.W.3d 99, 105 (Tenn. 2007) (citing *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997)).

## B.  *The Exclusionary Rule*

Despite its protections, the Fourth Amendment "'contains no provision expressly precluding the use of evidence obtained in violation of its commands,' *Arizona v. Evans*, 514 U.S. 1, 10 [ ] (1995)."  *Herring*, 555 U.S. at 139.  The *Herring* Court noted that common law "establish[es] an exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial."  *Id.*; *Weeks v. United States*, 232 U.S. 383, 398 (1914); *State v. Reynolds*, 504 S.W.3d 283, 314 (Tenn. 2016) (describing Tennessee's exclusionary rule as "a judicially crafted remedy").  The exclusionary rule was "'designed to safeguard Fourth Amendment rights generally through its deterrent effect.'"  *Id.* at 139-40 (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)).

The purpose of the exclusionary rule under the Fourth Amendment is to deter police misconduct, *id*. at 141 (citation omitted), and "to prevent police from violating suspects' constitutional rights," *State v. Sanders*, 452 S.W.3d 300, 311 (Tenn. 2014).  "'[T]his Court has both the authority and the responsibility to decide whether [a] good-faith exception [to the exclusionary rule], or any other exception, should be adopted'" because the rule originated in this Court.  *State v. Lowe*, 552 S.W.3d 842, 852 (Tenn. 2018) (quoting *State v. Reynolds*, 504 S.W.3d 283, 314 (Tenn. 2016); *see also Herring*, 555 U.S. at 139 (noting that the exclusionary rule is a "judicially created rule").

## C.  *The Good-Faith Exception*

In this case, the State urges this Court to adopt the good-faith exception set forth by the United States Supreme Court in *Herring*.  This Court has not previously had an opportunity to consider whether to apply *Herring* in Tennessee, but the facts of this case squarely present the question of whether it is prudent for us to do so at this time.

1.  Evolution of the Federal Good-Faith Exception

The landmark decision establishing the federal good-faith exception was issued by the United States Supreme Court in *United States v. Leon*, 468 U.S. 897, 913 (1984) (stating that the Court had not yet recognized any form of good-faith exception to the Fourth Amendment exclusionary rule but that its "evaluation of the costs and benefits of suppressing reliable physical evidence seized by officers reasonably relying on a warrant issued by a detached and neutral magistrate leads to the conclusion that such evidence should be admissible in the prosecution's case in chief").  In *Leon*, officers obtained a search warrant based on information provided by an unproven confidential informant.  *Id.* at 901.  A thorough investigation ensued, after which officers obtained a facially valid search warrant for Leon's residence as well as residences belonging to other defendants.  *Id.* at 901-02.  Based on the evidence recovered, Leon was indicted for conspiracy to possess and distribute cocaine and a variety of other criminal offenses.  *Id.* at 902.  The defendants filed motions to suppress in the district court.  *Id.*  Although the trial court found that the officer had acted in good faith, it nonetheless granted the motions.  *Id.* at 903-04.  The Ninth Circuit Court of Appeals agreed, concluding that the information in the affidavit was stale and also failed to establish the informant's reliability.  *Id.*

The United States Supreme Court granted the State's petition for writ of certiorari. The *Leon* Court noted that the exclusionary rule "operates as 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect. . . .'"  *Id.* at 906 (quoting *Calandra*, 414 U.S. at 348).  In balancing the societal costs that accompany imposition of the exclusionary rule, the Court opined that "the balancing approach that has evolved in various contexts—including criminal trials—'forcefully suggest[s] that the exclusionary rule be more generally modified to permit the introduction of evidence obtained in the reasonable good-faith belief that a search or seizure was in accord with the Fourth Amendment.'"  *Id.* at 909 (quoting *Gates*, 462 U.S. at 255).

The Court, emphasizing that the purpose behind the exclusionary rule is the deterrent effect on police misconduct, stated, "[W]here the officer's conduct is objectively reasonable, 'excluding the evidence will not further the ends of the exclusionary rule in any appreciable way; . . . [e]xcluding the evidence can in no way affect his future conduct unless it is to make him less willing to do his duty.'"  *Id.* at 919-20 (quoting *Stone*, 428 U.S. at 539-40) (White, J., dissenting).

The Supreme Court has expanded the good-faith exception in other cases.  In *Massachusetts v. Sheppard*, 468 U.S. 981, 990 (1984), the Court declined to apply the

exclusionary rule where a warrant was held invalid as a result of judge's clerical error, explaining, that "'the exclusionary rule was adopted to deter unlawful searches by police, not to punish the errors of magistrates and judges.'" *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 263 (1983) (White, J., concurring in judgment). In *Illinois v. Krull*, 480 U.S. 340, 349-50 (1987), the Court extended the good-faith exception to searches conducted in reasonable reliance on subsequently invalidated statutes because "legislators, like judicial officers, are not the focus of the rule." Later, reasonable reliance by police on erroneous information regarding an arrest warrant in a database maintained by *judicial* employees was held to not trigger the exclusionary rule. *Arizona v. Evans*, 514 U.S. 1, 14 (1995). *Herring*, to be discussed at length *infra*, further extended *Evans* to apply to a warrant database that was maintained by *police* in a neighboring jurisdiction because "isolated, nonrecurring police negligence . . . lacks the culpability required to justify the harsh sanction of exclusion." *Davis v. United States*, 564 U.S. 229, 239 (2011) (citation and internal quotation marks omitted).

In *Davis*, the Supreme Court expanded the good-faith exception and held that evidence obtained during a search conducted in reasonable reliance on binding precedent is not subject to the exclusionary rule. 564 U.S. at 241. At the time of the vehicle stop and warrantless search, then-existing Supreme Court precedent permitted as constitutional "contemporaneous vehicle searches incident to arrests of recent occupants" of a vehicle. *Id*. at 235; *New York v. Belton*, 453 U.S. 454 (1981)*.* During the pendency of the criminal case, the United States Supreme Court released its opinion in *Arizona v. Gant*, 556 U.S. 332 (2009), which called into question the *Belton* decision. The United States Supreme Court granted *certiorari* and, in applying the good-faith exception to the facts, reiterated, "We have stated before, and we reaffirm today, that the harsh sanction of exclusion 'should not be applied to deter objectively reasonable law enforcement activity.'" *Davis*, 564 U.S. at 241 (quoting *Leon*, 468 U.S. at 919).

### 2.  *Herring v. United States*

Although this case was decided before *Davis*, because of its factual similarity to the instant case and the State's urging this Court to adopt its rationale, we discuss it separately rather than as part of the evolution of the United States Supreme Court's development of the federal exclusionary rule.

In *Herring*, the defendant traveled to the Coffee County, Alabama Sheriff's department to retrieve something from his impounded truck. *Herring*, 555 U.S. at 137. Being familiar with the defendant and his history with law enforcement, an investigator requested the county's warrant clerk to check for any outstanding warrants for Herring's

arrest in either Coffee County or in neighboring Dale County. *Id*. Dale County's clerk reported an active arrest warrant for Herring. *Id*. The Coffee County clerk relayed the information to the investigator and then requested a faxed copy of the warrant from Dale County as confirmation. *Id*. Meanwhile, the investigator and a deputy followed Herring as he left the impound lot and pulled him over, subsequently arresting him. *Id*. A search incident to the arrest revealed illegal drugs in Herring's pocket as well as a handgun in his automobile, which, as a felon, he was not permitted to possess. *Id*.

However, the Dale County warrant clerk had mistakenly reported an arrest warrant that had been recalled five months earlier. *Id*. at 137-38. The warrant clerk discovered the error when she looked through the files to retrieve a physical copy of the arrest warrant. *Id*. at 138. The Dale County Sheriff Department's computer records should have corresponded with actual arrest warrants; the office maintained both sets of records. *Id*. at 137-38. When the warrant clerk could not locate a physical copy of the warrant, she called a court clerk, who informed her that the warrant had been previously recalled. *Id*. at 138. Standard procedure in Dale County was that when warrant was recalled, either the court clerk's office or a judge's chambers would call the warrant clerk, who would then enter the information in the computer database and dispose of the physical copy. *Id*. However, the information about the recall of Herring's arrest warrant did not appear in the database. *Id*. As soon as the Dale County warrant clerk realized the mistake, she telephoned her counterpart in Coffee County to alert her, who then radioed the investigator to inform him of the misinformation. *Id*. Although the mistake was found within ten to fifteen minutes, the information was nonetheless too late; the investigator had already arrested Herring and seized the contraband. *Id*. At the suppression hearing, an officer testified that he had never had reason to question information about a Dale County warrant, and both warrant clerks testified that they could not remember a similar miscommunication ever happening during the course of their employment. *Id*.

In the District Court for the Middle District of Alabama, Herring moved to suppress the evidence against him on the ground that his initial arrest had been illegal because the warrant had been rescinded. *Id*. The District Court adopted the Magistrate Judge's recommendation to deny the motion "because the arresting officers had acted in a good-faith belief that the warrant was still outstanding. Thus, even if there were a Fourth Amendment violation, there was 'no reason to believe that application of the exclusionary rule here would deter the occurrence of any future mistakes.'" *Id*. at 138 (quoting *United States v. Herring*, 451 F.Supp.2d 1290 (2005)). The Court of Appeals for the Eleventh Circuit affirmed. *Id*. (citing *United States v. Herring*, 492 F.3d 1212 (2007)). The Eleventh Circuit noted that Dale County's failure to update the computer database to reflect the recall of the arrest warrant amounted to negligence but that the

- 10 -

negligence was neither reckless nor deliberate, a fact that the *Herring* Court considered "crucial to [its] holding that this error is not enough by itself to require 'the extreme sanction of exclusion.'" *Id.* at 140 (quoting *Leon*, 468 U.S. at 916). The Eleventh Circuit found that the officers "were entirely innocent of any wrongdoing or carelessness" and that even if the sheriff's department records were maintained by a law enforcement officer, "the conduct in question [wa]s a negligent failure to act, not a deliberate or tactical choice to act." *Id.* at 138 (citation omitted). It further concluded that the benefit of suppressing the evidence "would be marginal or nonexistent" and, accordingly, applied the good-faith exception established in *Leon*. *Id.* at 139 (citations omitted). The United States Supreme Court granted Herring's petition for certiorari to resolve a conflict among states because other jurisdictions have applied the exclusionary rule to evidence obtained through similar police errors. *Id.* (citing *Hoay v. State*, 71 S.W.3d 573, 577 (2002)).

The *Herring* Court began by reviewing and emphasizing the rationales and holdings of the prior Supreme Court precedent embodying the good-faith exception to the exclusionary rule. *Id.* at 140-41. The Court continued, "'[T]he rule's costly toll upon truth-seeking and law enforcement objectives presents a high obstacle for those urging [its] application.'" *Id.* at 141 (quoting *Pa. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 364-65 (1998)) (internal quotation marks omitted); *see also United States v. Havens*, 446 U.S. 620, 626-27 (1980); *United States v. Payner*, 447 U.S. 727, 734 (1980). "The extent to which the exclusionary rule is justified by these deterrence principles varies with the culpability of the law enforcement conduct . . .[;] 'an assessment of the flagrancy of the police misconduct constitutes an important step in the calculus' of applying the exclusionary rule." *Id.* at 143 (quoting *Leon*, 468 U.S. at 911).

The Supreme Court explained that "error that arises from nonrecurring and attenuated negligence is thus far removed from the core concerns that led us to adopt the rule in the first place." *Id.* at 144. Accordingly, the Supreme Court held "that when police mistakes are the result of negligence such as that described here, rather than systemic error or reckless disregard of constitutional requirements, any marginal deterrence does not 'pay its way' . . . . In such a case, the criminal should not 'go free because the constable has blundered.'" *Id.* at 147-48 (internal citations omitted).

### 3. Other Jurisdictions

In searching for guidance on this issue, we note the lack of a similar fact pattern—a person arrested without a warrant based on a specific condition such as being barred from property—in any other jurisdiction. However, because Tennessee law permits a

warrantless misdemeanor arrest for criminal trespass when an officer has knowledge of the defendant's status of being barred from the housing authority property, for the purpose of our analysis, we find instructive a comparison of cases in which law enforcement officers acted upon an arrest warrant that was later determined to be invalid,[2] *see, e.g., State v. Ash*, 12 S.W.3d 800, 804 (Tenn. Crim. App. 1999), or upon information from a computerized database, such as NCIC or motor vehicle databases, that was later deemed inaccurate.

Some jurisdictions have rejected a good-faith exception to the exclusionary rule on the basis of state law. *See State v. Koivu*, 272 P.3d 483, 491 (Idaho 2012) (holding that good-faith exception would not be adopted even in cases where police misconduct is not alleged); *State v. Shannon*, 120 A.3d 924, 933 (N.J. 2015) (concluding that an invalid warrant is constitutionally defective and "cannot provide the basis for an objective and reasonable belief that probable cause to arrest exists" and that "[t]o hold otherwise would be akin to adopting the good-faith exception to the exclusionary rule that has been explicitly, and consistently, rejected" by the court); *State v. Handy,* 991 A.2d 281, 285-86 (N.J. Sup. Ct., App. Div. 2010) (noting that although "federal courts recognize a good-faith exception to the exclusionary rule, pursuant to which evidence will not be suppressed if the police officers employed an objective standard of reasonableness and acted in good faith with respect to a warrant later found to be defective, . . . New Jersey, however, does not recognize a good-faith exception") (internal citations omitted); *Commonwealth v. Maingrette*, 20 N.E.3d 626, 629 n.3 (Mass. App. Ct. 2014) (recognizing that Massachusetts has not adopted the "good-faith" exception but instead focuses on "whether the violations are substantial and prejudicial and whether exclusion will deter future police misconduct") (internal citations omitted); *Commonwealth v. Johnson*, 86 A.3d 182, 191 (Pa. 2014) (declining to apply the good-faith exception to allow introduction of evidence seized pursuant to an arrest made on an invalid warrant); *State v. Betancourth*, 413 P.3d 566, 571 (Wash. 2018) (explaining that while the federal exclusionary rule is grounded in deterring unlawful police conduct, the state rule's "paramount concern" is protecting the rights of the individual).

Other states have applied the good-faith exception in a variety of circumstances. *See Shotts v. State*, 925 N.E.2d 719 (Ind. 2010) (applying "good-faith" exception to

---

[2] To be clear, in this context "invalid" refers to a warrant that officers believed at the time to be valid but is later determined to have been recalled or otherwise found to be without force and effect. We do not intend to include in this discussion warrants that were challenged because of clerical problems, as that situation has already been addressed by this Court. *See Lowe,* 552 S.W.3d at 859.

- 12 -

exclusionary rule where officers reasonably relied on erroneous NCIC report of an outstanding Alabama warrant for defendant's arrest); *Domino v. Crowley City Police Dep't*, 65 So.3d 289 (La. Ct. App. 2011) (applying "good-faith" exception to exclusionary rule where officer reasonably relied on validly issued warrant, which warrant he in good-faith did not know had been recalled); *State v. Johnson*, 6 So.3d 195, 196 (La. Ct. App. 2009) (applying *Herring* good-faith exception to drugs seized when officer pulled over defendant for a valid traffic stop, learned of an arrest warrant issued from same county—which was later determined to be invalid—through database maintained by same county, and attempted to verify the warrant through NCIC but system was down); *McCain v. State*, 4 A.3d 53, 65 (Md. Ct. Spec. App. 2010) (recognizing good-faith exception based on officer's reasonable reliance on information contained in the state motor vehicle registration that was later determined to be inaccurate); *State v. Rolenc*, 885 N.W.2d 568 (Neb. Ct. App. 2016) (adopting good-faith exception and admitting evidence obtained pursuant to search incident to arrest that was based on incorrect information in driver's license database); *State v. Bromm*, 826 N.W.2d 270, 276 (Neb. 2013) (admitting evidence of driving under the influence pursuant to good-faith exception when officer pulled over the vehicle driven by defendant for suspicion of falsified tags based on erroneous information from county clerk's office); *State v. Geiter,* 942 N.E.2d 1161 (Ohio Ct. App. 2010) (applying "good-faith" exception to exclusionary rule where officer was objectively reasonable in relying on erroneous information conveyed via police dispatch); *Bellamy v. Commonwealth*, 60 Va. App. 125, 132 (Va. Ct. App. 2012) (applying good-faith exception to allow introduction of evidence obtained as a result of officer's reasonable belief that an arrest warrant for defendant was outstanding, relying on information from dispatcher that was later deemed to be erroneous); *see also    State v. Nelms*, 81 N.E.3d 508, 513 (Ohio Ct. App. 2017) (concluding, in dicta, that even if the vehicle searched had not been covered by the valid search warrant, the good-faith exception to the exclusionary rule would nonetheless apply because officers believed in good faith that the vehicle was covered by the warrant).

Still other jurisdictions have recognized the good-faith exception but concluded it was inapplicable under the facts of the case. *People v. Arnold*, 914 N.E.2d 1143, 1155-56 (Ill. Ct. App. 2009) (acknowledging good-faith exception but declining to apply it where officer arrested defendant because defendant's name was on a warrant list from several days prior and officer had not received confirmation of the warrant before handcuffing defendant).

## 4. Tennessee's Good-Faith Exception

Despite having opportunities to do so, Tennessee did not adopt a good-faith exception to the exclusionary rule until 2016. *See State v. Keith*, 978 S.W.2d 861, 871 (Tenn. 1998) (Birch, J., dissenting) (noting that Tennessee had not yet adopted the good-faith exception of *Leon*); *State v. Carter*, 16 S.W.3d 762, 768 n.8 (Tenn. 2000) (expressing reticence about incorporating a good-faith exception into Tennessee's jurisprudence and instead deciding the admissibility of a confession on Fourth Amendment grounds).

In 2016, this Court was squarely presented with an opportunity to decide whether to apply the *Davis* good-faith exception in Tennessee. *State v. Reynolds*, 504 S.W.3d 283 (Tenn. 2016). In *Reynolds*, an officer ordered a warrantless blood draw, pursuant to Tennessee's implied consent law, from a defendant who was involved in a motor vehicle fatality and who he reasonably believed to have been intoxicated at the time. *Id.* at 289. Although at the time of the defendant's vehicle collision, United States Supreme Court precedent permitted warrantless blood draws in DUI cases based on the exigent circumstances created by the rapid dissipation of alcohol in the blood stream, *Schmerber v. California*, 384 U.S. 757, 770-71 (1966), the trial court nonetheless suppressed the evidence on other grounds, *Reynolds*, 504 S.W.3d at 295.

The State successfully appealed to the Court of Criminal Appeals, which stated that even if the implied consent law were found to be unconstitutional, Tennessee should adopt the good-faith exception set forth in the United States Supreme Court's decision in *Davis v. United States*, which held that "[e]vidence obtained during a search conducted in reasonable reliance on binding precedent is not subject to the exclusionary rule." *Davis*, 564 U.S. at 241. This Court granted the defendant's application for permission to appeal and adopted the good-faith exception to the state exclusionary rule as described in *Davis,* explaining that this adoption was a logical extension because "we have already recognized and applied other doctrines that are in effect exceptions to the exclusionary rule." *Reynolds*, 504 S.W.3d at 313 (citing *State v. Carter*, 160 S.W.3d 526, 532-33 (Tenn. 2005); *State v. Huddleston*, 924 S.W.2d 666, 674-75 (Tenn. 1996)). Notably, however, this Court left open other applications of the good-faith exception, stating, "We adopt only the *Davis* good-faith exception, which 'represents a small fragment of federal good-faith jurisprudence.'" *Id.* (quoting *State v. Lindquist*, 869 N.W.2d 863, 876 (Minn. 2015)).

This Court next considered, in three separate cases, the good-faith exception as it pertained to technical flaws in otherwise valid search warrants. In *State v. Davidson*, 509

S.W.3d 156, 184 (Tenn. 2016), the investigating officer prepared an affidavit and search warrant for the search of the defendant's residence but inadvertently failed to change the printer settings from "letter" to "legal" size, which resulted in the bottom three inches, including the signature line of the affiant, being omitted from the affidavit. In the judge's chambers, both the judge and the investigator signed the warrant, but no one noticed the omission of the signature line for the affiant. *Id.* The *Davidson* Court explained that despite the technical deficiency on the warrant, it nonetheless "passed constitutional muster" because "[t]he Fourth Amendment's oath or affirmation requirement was satisfied when [the investigator] raised his right hand and swore to the truth of the facts in the unsigned affidavit." *Id.* at 183. This Court adopted a good-faith exception to permit the admission of evidence obtained as a result of an officer's reasonable and good faith reliance on a search warrant that he believed to be valid but was later determined to be invalid "solely because of a good-faith failure to comply with the affidavit requirement [of the Tennessee Code and the Tennessee Rules of Criminal Procedure]." *Id.* at 185-86.

Next, in *Lowe*, we held that "a good-faith clerical error that results in an inconsequential variation between the three copies of a search warrant required pursuant to Rule 41, in and of itself, does not entitle the moving party to suppression of the evidence collected pursuant to the warrant." 552 S.W.3d at 859. Accordingly, we adopted a good-faith exception to the exclusionary rule under such circumstances. In *State v. Daniel*, we applied a good-faith exception to the technical requirement that the officer executing a search warrant leave a copy of the warrant with the person being searched "given the specific facts of this case in which the Defendant was aware of the blood draw and the fact that no property of the Defendant was seized as a result of the warrant which could later be returned." 552 S.W.3d 832, 841 (Tenn. 2018).

5. Application

We have reviewed cases from other jurisdictions that support both the State's and the defendant's positions in this case, as well as the development of the federal good-faith exception to the exclusionary rule and our own. In our view, having the issue squarely presented, it is appropriate at this point to adopt the good-faith exception set forth in *Herring* and to hold, as the United States Supreme Court did, "that when police mistakes are the result of negligence . . . rather than systemic error or reckless disregard of constitutional requirements, any marginal deterrence does not 'pay its' way.'" *Herring*, 555 U.S. at 147-48 (citation omitted). This is in keeping with our prior holdings clarifying that Tennessee's search and seizure provisions are "identical in intent and

purpose" with the United States Constitution's Fourth Amendment.[3] *See, e.g., State v. Hawkins*, 519 S.W.3d 1, 33 (Tenn. 2017); *Christensen*, 517 S.W.3d at 68; *State v. Tuttle*, 515 S.W.3d 282, 304 (Tenn. 2017); *Davidson*, 509 S.W.3d at 182; *Reynolds*, 504 S.W.3d at 303; *State v. Willis*, 496 S.W.3d 653, 719 (Tenn. 2016) (stating "that federal cases applying the Fourth Amendment should be regarded as 'particularly persuasive'" (quoting *State v. Hayes*, 188 S.W.3d 505, 511 (Tenn. 2006))).

Having concluded that the good-faith exception can hereinafter be considered in Tennessee, we next consider the nature of the police error in the instant case.

In the instant case, Officer Cummings, upon seeing the defendant on property from which the officer thought he had been barred, contacted dispatch to confirm the defendant's status and received confirmation that the defendant had been barred. Acting on the erroneous confirmation, Officer Cummings arrested the defendant for criminal trespass and seized marijuana from the defendant's pocket. Nearly three weeks later, a similar situation ensued, and Officer Cummings again arrested the defendant for trespass and seized additional marijuana at that time.

With regard to the information provided to Officer Cummings associated with the first arrest, we must question, as did the trial court, the propriety of the police department's practice of maintaining two lists—one for names of barred individuals and one for the names of individuals who had been removed from the list. It clearly did not provide for a system of checks and balances to prevent errors such as this from occurring.

---

[3] Our adoption of *Herring*'s good-faith exception is consistent with the recent amendment to Rule 41 of the Tennessee Rules of Criminal Procedure. Tenn. R. Crim. P. 41 (as amended July 1, 2018). Effective July 1, 2018, Rule 41 has been amended to provide trial courts the discretion to determine whether to exclude evidence that was seized pursuant to a search warrant that meets constitutional requirements but is noncompliant with Rule 41's technical requirements. *Lowe*, 552 S.W.3d at 854 n.9. The amendment also aligns Rule 41 with recent statutory changes and developments in case law. *Id.* (citing *State v. Tuttle*, 515 S.W.3d 282, 308 (Tenn. 2017); *Reynolds*, 504 S.W.3d at 313). In applying Rule 41 during hearings on motions to suppress the evidence, trial judges will hereafter have discretion to consider variations of the good-faith exception as described herein. In doing so, we urge the trial courts to consider the following non-exhaustive factors: (1) whether the police error was the result of simple negligence rather than systemic error; (2) whether the error was the result of reckless disregard of constitutional requirements; (3) whether the error was isolated rather than recurrent; and (4) whether the error existed, undetected or uncorrected, for such an amount of time as to indicate reckless or gross negligence.

Whatever the reason might have been, it clearly fell short of its intended purpose. The mistake existed for approximately five years before being brought to light.

With regard to the second arrest, we note that the transcript indicates that at some point, the defendant and his aunt visited Lieutenant Dowell at the police department and complained that the defendant was not barred from the housing authority property at the time of at least one of his arrests. At that time, Lieutenant Dowell consulted both the barred list and the list of unbarred individuals and noticed the discrepancy but said, "[A] mistake was made that he was still on this list . . . ." The testimony is unclear as to exactly when the department was put on notice about the mistake—whether this occurred after the defendant's first arrest or the second—and there are no exhibits to clarify this point.

As stated *supra*, we begin with the proposition that warrantless searches and seizures are presumptively unreasonable, and any evidence that is discovered as a result thereof is subject to suppression. *Turner*, 297 S.W.3d at 160 (citation omitted). The State carries the burden of proving that a warrantless search was constitutionally permissible. *Ingram*, 331 S.W.3d at 755 (citation omitted); *see United States v. Diehl*, 276 F.3d 32, 41-42 (1st Cir. 2002) (explaining that when the State seeks to introduce evidence based on a good-faith exception to the exclusionary rule, the State carries the burden to demonstrate that the conduct at issue meets the standards of good faith); *see, e.g.*, *Lowe*, 552 S.W.3d at 859 (recognizing that the State bears the burden of proving that an error resulting in a warrant being in technical violation of procedural rules or statutes was made in good faith and resulted in no prejudice to the defendant). In *Lowe*, this Court recognized the amorphous nature of the term "good faith" but posited that "a good-faith mistake is one characterized by simple, isolated oversight or inadvertence. A good-faith mistake does not include conduct that is deliberate, reckless, or grossly negligent, nor does it include multiple careless errors." *Lowe*, 552 S.W.3d at 860.

In this case, aside from a brief comment by Lieutenant Dowell that the list is correct "99%" of the time, the record is devoid of any evidence that the error in this case was a result of a good-faith mistake. Lieutenant Dowell did not provide a factual basis for this statistic. For example, Lieutenant Dowell did not testify that he, or anyone in his department, reconciled the two lists on a regular basis.

By contrast, the proof in *Herring* included a description of Dale County's standard procedure, which involved the court clerk's office or the judge's chambers calling the warrant clerk when the warrant had been recalled. *Herring*, 555 U.S. at 138. The warrant clerk would then enter the information into the computer database and dispose of

the physical copy of the warrant. *Id.* The Supreme Court justifiably relied on this proof to conclude that the error in *Herring* resulted from negligence.

In *Herring*, the error in the Dale County warrant database at issue remained undiscovered for five months; in this case, the error remained undetected for almost five years. The constitutional violation here resulted not from "nonrecurring and attenuated negligence" but rather from a system inherently flawed by the maintenance of separate lists and the lack of any regular process by which to reconcile the two.

Moreover, in opining that the facts of *Herring* and this case are "indistinguishable," Justice Kirby's separate opinion highlights the fact that in both cases, the errors were not discovered until the second source (in *Herring*, the physical warrant file; in this case, the "remove from barred list") was consulted. A key and insurmountable difference is that the *Herring* error was caught within minutes; the error in this case was not caught until the defendant himself, together with his aunt, met with Lieutenant Dowell to point out the error. By that time, he had been arrested not once *but twice* on the faulty information. We conclude that the State failed to carry its burden of proving that the evidence seized pursuant to the defendant's warrantless arrests should be exempted from exclusion by the good-faith doctrine. We hold that the good-faith exception to the exclusionary rule does not apply to the facts of this case.

Sound policy reasons support this conclusion. The *Herring* Court reiterated, "[T]he benefits of deterrence must outweigh the costs." *Herring*, 555 U.S. at 141 (citing *Leon*, 468 U.S. at 910). "The extent to which the exclusionary rule is justified by these deterrence principles varies with the culpability of the law enforcement conduct . . . [;] 'an assessment of the flagrancy of the police misconduct constitutes an important step in the calculus' of applying the exclusionary rule." *Id.* at 143 (quoting *Leon*, 468 U.S. at 911). Similarly, the Supreme Court stated in *Krull* that "evidence should be suppressed 'only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.'" *Krull*, 480 U.S. at 348-49 (quoting *United States v. Peltier*, 422 U.S. 531, 542 (1975)). "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring*, 555 U.S. at 144.

In *Leon*, the Supreme Court stated, "If exclusion of evidence . . . is to have any deterrent effect, therefore, it must alter the behavior of individual law enforcement officers or the policies of their departments." *Leon*, 468 U.S. at 918. By any standards, the driving policy behind a system that permits a mistake to lie dormant in its records for

almost five years must be altered. '"The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right."' *Id.* at 919 (quoting *United States v. Peltier*, 422 U.S. 531, 539 (1975)). The record-keeping system in this case rises to the level of negligence that cannot be ignored when an individual's constitutional rights hang in the balance. We characterize this inadvisable practice as the kind of "systemic error or reckless disregard of constitutional requirements" against which *Herring* cautioned. *See Herring*, 555 U.S. at 147.

In the defendant's/appellee's brief, he argued:

> In the case at hand, to allow a police officer to arrest an individual based upon a list that the police officer's own agency creates, maintains and has exclusive control over and then claim good faith based upon negligently created information from the list would create a dangerous precedent. The risk of potential abuse is very palpable and the exclusionary rule serves as a deterrent to future abuses. In the *Herring* case, the police officer's information was garnered from another police agency's database and had not been maintained by the arresting officer's county. That scenario is distinguishable from the case at hand.

We agree. This Court has recognized the doctrine of "collective knowledge" of police officers. *State v. Clayton*, 535 S.W.3d 829, 849 (Tenn. 2017) ("Whether the police possessed probable cause requires consideration of the 'collective knowledge that law enforcement possessed at the time of the arrest . . . .'" (quoting *State v. Bishop*, 431 S.W.3d 22, 36 (Tenn. 2014)); *Bishop*, 431 S.W.3d at 36 (explaining that consideration of the collective knowledge requires that "a sufficient nexus of communication existed between the arresting officer and any other officer or officers who possessed relevant information. Such a nexus exists when the officers are relaying information or when one officer directs another officer to act.").

In light of our adherence to the principles of collective knowledge when determining probable cause, we find it applicable here. "[I]f we impute to the arresting officer the collective knowledge of law enforcement agencies for the purpose of establishing probable cause, we must also charge him with knowledge of information exonerating a suspect formerly wanted in connection with a crime." *People v. Ramirez*, 668 P.2d 761, 764 (Cal. Sup. Ct. 1983). If "[t]he 'fellow officer' or 'collective knowledge' rule cannot function . . . permissively[] to validate conduct otherwise

unwarranted[,] [then] the rule also operates prohibitively[] by imposing on law enforcement the responsibility to disseminate only accurate information." *Id.* at 764-65.

> The point is *not* that probable cause is lacking because it turned out that the "facts" upon which the officer acted were actually not true . . . Rather, the point is that the police may not rely upon incorrect or incomplete information when they . . . are at fault in permitting the records to remain uncorrected.

5 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 3.5(d), at 359-60 (5th ed. 2012). "The notion may be that when the law enforcement system elects to construct an elaborate recordkeeping system it must be charged with the responsibility of keeping that system reasonably up to date." *Id*. at 362-63 (explaining that while courts are "understandably not inclined to infer police misconduct" when the records are outdated by a few days but that "to tolerate much longer delays on the bizarre notion that police 'forgot'" to update the system is clearly wrong).

> In *Leon*, the United States Supreme Court enunciated the same concept, stating:

> References to "officer" throughout this opinion should not be read too narrowly. It is necessary to consider the objective reasonableness, not only of the officers who eventually executed a warrant, but also of the officers who originally obtained it or who provided information material to the probable-cause determination. Nothing in our opinion suggests, for example, that an officer could obtain a warrant on the basis of a "bare bones" affidavit and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search.

*Leon*, 468 U.S. at 925 n.24; *see Whiteley v. Warden*, 401 U.S. 560, 568 (1971). "In analyzing the applicability of the rule," the *Herring* Court reiterated, "*Leon* admonished that we must consider the actions of all the police officers involved." *Herring*, 555 U.S. at 140 (citing *Leon*, 468 U.S. at 925 n.24).

Had the information regarding the defendant's removal from the barred list been entered appropriately into the database by Lieutenant Dowell or his staff, Officer Cummings would have received an accurate response to his inquiry, i.e., he would have been informed there was no basis for detaining the defendant for criminal trespass. Because the reinstatement of the defendant was or should have been within the "collective knowledge" of the police, "we cannot permit the arresting officer to rely with

- 20 -

impunity on his fellow officers' errors of omission, but must impute their accurate knowledge to him." *Ramirez*, 668 P.2d at 765. The Union City Police Department created and maintained the barred list, upon which a Union City Police officer relied, thus we conclude that a sufficient nexus existed between Officer Cummings as the arresting officer and the Lieutenant Dowell (and/or the dispatcher acting at his direction) as the officer maintaining the information. To be clear, we do not find fault with Officer Cummings' actions; he merely acted on information that was given to him. Nonetheless, because the information was propagated by the same agency, as a matter of law the information must be imputed to Officer Cummings.

Justice Kirby's separate opinion makes much of the majority's reasoning that the knowledge of Lieutenant Dowell and his staff should be imputed to Officer Cummings because they work within the same police department. We agree that *Herring* does not turn on whether the information is disseminated to the same department that collected it or to a sister agency. However, in this case, the Union City dispatcher could have easily indicated that McElrath was on the barred list and then quickly consulted the "remove from barred" list to confirm it. The ease of access to information within the same department is much greater than that of a different department. While *Herring* could still apply to intradepartmental information, it does not apply in this case, and it is, indeed, a distinction *with* a difference.

This error cannot be saved by application of the *Herring* good-faith doctrine. Applying these fundamental concepts to the instant case, we conclude that the conduct at issue was so objectively culpable as to require exclusion and that the deterrence obtained by excluding the evidence outweighs the societal costs. The arrests arose not from "nonrecurring and attenuated negligence" but rather from a system that was so fraught with problems that a mistake remained undetected for several years. This case presents a factual scenario that falls outside of the realm of "good faith" and is more closely akin to the "reckless[ ] or grossly negligent" category of errors proscribed by *Lowe*. 552 S.W.3d at 860. The trial court properly suppressed the evidence in both cases, and the judgment of the Court of Criminal Appeals is affirmed.

## CONCLUSION

Therefore, we adopt the good-faith exception as set forth in *Herring v. United States*. However, we conclude that the facts of this case do not support application of the

good-faith exception to the exclusionary rule.  We affirm the judgment of the Court of Criminal Appeals.  Costs are taxed to the State.

_____
ROGER A. PAGE, JUSTICE